Madam Clerk, please call the first case. 13-3454A FSCME v. State Department of Illinois Department of Central Management Services Thank you. Will counsel who will be presenting this morning please step forward? Counsel for appellant, could you identify yourself please? One, Your Honor, Melissa Auerbach for Petitioner AFSCME Council 31. Thank you. And for the appellee? Good morning. Assistant Attorney General Ann Mascaleras for the Respondents, Illinois Department of Central Management Services and the Illinois Labor Relations Board. Thank you. Well, the briefs are fine. They're copious and there are a lot of moving parts. So let's talk about the time. Normally we do 20-20 in a 10-minute rebuttal. So if you have concerns about that, would you discuss it with us now? Would you like to have an enlargement of time for this? Do you think you need it? We always will enlarge it to a certain extent. We just like to have some idea. I mean, we're fine with the time unless the Court ends up with a lot of questions. So I guess it depends on Your Honor. All right. Very well. Very well. Ms. Auerbach, would you proceed please? May I please the Court? Section 6.1 of the Illinois Public Labor Relations Act authorized the Governor for a one-year period to exclude up to 3,580 state positions from collective bargaining rights outside the Act's 30-year-old statutory scheme and on an arbitrary basis and is thus unconstitutional in its face. Was the 3,850 arbitrated? Arbitrary? Well, it gave him the authority to exclude up to 3,580 on an arbitrary basis. 3,850? 3,000. Did we do it wrong? 850? Was that an arbitrary number? I think that's the question. Well, oh, yes, it's the number arbitrary. I'm sorry. I misunderstood. There's no rationale set forth in the statute for the numbers that were chosen. It's a number. There's no legislative history to say what that number is or the reason for the 1,900 that could be excluded from existing bargaining units. So the numbers, yes, are arbitrary. And then the basis set forth, the authority given, is arbitrary. The statute is an improper delegation of legislative authority to the executive branch because the legislature failed to provide sufficient standards to guide the discretion the legislature gave the governor under the statute. But wasn't it very specific in terms of how it instructed the governor and how it limited the governor? Wasn't this very comprehensive, this Act? Well, it sets five categories and it sets the date-time limits. There is no rationale set forth for the date-time limits, the December 2, 2008. There's no rationale set forth in the statute for why an employee who was certified in a bargaining unit on December 1, 2008, was subject to keeping bargaining rights but an employee certified into a unit on December 3, 2008, could be stripped of bargaining rights if the governor chose to designate that person. There's no rationale set forth for that. Do all those rationales have to be articulated in the legislation or is it left to the courts, for example, to discern from what they did to why they did it? Well, for a facial challenge, which we submit the statute is facial and constitutional, the court looks at the face of the statute in light of the articulated purposes in legislative history. And there's nothing that shows why the arbitrary date was given. And then the categories given, so even within a category, say within the category in this particular case, a lot of the exclusions fall within Section 6b.2 and specifically senior public service administrators. But the statute gave the governor unlimited discretion to decide which, if any, senior public service administrators he could designate for exclusion. So he could have designated none. He could have designated every other one chosen arbitrarily. He could have designated employees whose names began with A, B, or F and not those who began with Q, R, and T. I mean, there's no rationale set forth in the statute as to how or what basis he was to go about choosing which employees in each of these categories he was going to designate for exclusion. And thus, and there's no, I know that the statement's brief says, well, to show a facial challenge, you have to show that there's no set of circumstances under which the statute would be constitutional and that if the governor only had designated one person and that person was indisputably a high-level managerial who fell within one of the clear categories, then it wouldn't have been unconstitutional. But there's no reading of the statute under which it can be read to say the governor did not have the authority to arbitrarily exclude people. The vetting was through the SPSA, the Special Public Senior Administrator designation. And once that was done, that was where the vetting was. And so people came through that, and they were examined in that, and it was those who received that designation or were double exempt from collective bargaining, they could do, they could take that position. Right, but there's no rationale set forth for why he would choose within. I mean, for instance, the Senior Public Service Administrator, there's a case we set in our brief where the board in the past had found pharmacy managers who held the SPSA classification not to be managerial after an evidentiary hearing based on their fact-finding duties and had found that they were entirely professional employees who weren't managerial. And so here, the governor could have chosen, say, to exclude those types of people who don't hold high-level managerial duties, but not to exclude others who are similarly situated. But administrative law judges routinely took these cases and examined them, and the majority of them, they didn't take oral argument after reviewing them at all. You're talking about here? Yes. Yes, that's correct. I mean, that goes to our procedural due process argument. Well, isn't an ALJ hearing a procedural due process? Well, the ALJs didn't hold any hearings. The board found that the state, that the governor, CMS acting for the governor, even though the Section 6B required that a designation petition set forth a job title and job duties, and also required that the board allow due process, the board basically found, the ALJs found and the board approved, that as long as a job description was submitted, that that was sufficient and that it didn't matter whether it was accurate. And so there was no due process given. I mean, we set forth in our brief a couple of examples of the state. The state in their brief relied on a few job titles and said that that shows that they were high-level sounding titles, and that shows that the governor rashly exercised his authority to exclude people with high-level sounding titles. But we showed in our brief that a couple of those people are titles that had actually been, the employees submitted evidence and the union submitted evidence in support of our petition objections, that the people said they weren't doing the job that was set forth in their job duties. One of them wasn't doing anything remotely in their job duties. They were, was working in a different office and a different county and wasn't doing, looking for, so on page 26 of our brief, there's an employee in case SDE 14-099, and the evidence submitted was that the employee job description said that the employee was engaged in developing policies on personnel matters and management practices, and the employee said that what he'd been doing the whole time he'd been hired since 2007 was performing duties in connection with an internal, constructing an internal website for the Department of Employment Security. And another case cited on page 27 of our brief, in case SDE 14-099, the evidence submitted was that the job description was completely inaccurate, that the employee said he'd never held the position or performed the duties in that job description, and he was not located in an office set forth in the job description. And so even though that evidence was submitted, the board employed a presumption that it didn't matter, and so basically read out of the statute the requirement to submit job duties, and read out of the statute the requirement to have a due process hearing. And, I mean, what was the point of the legislature saying that the board should hold a due process hearing if in a case like that it didn't allow a hearing? There were four or five administrative hearings that were brought up for review. Is that right? I mean, none of these cases went to hearing. They, AFSCME filed objections, some of the employees filed objections, the ALJs issued decisions finding no hearing was necessary, and those went for review before the board. There were not hearings, there were not administrative evidentiary hearings in any of these cases. And I know that the state submits that, you know, they allow due process without having a formal hearing or an evidentiary hearing, but we submit that in cases like this that it was arbitrary and a denial of due process not to allow a hearing to show that the employee didn't do what was set forth in the job description. Otherwise, what was the, I mean, basically the board read the requirement to submit the job description as a procedural thing, which you just had to submit this piece of paper, but it didn't have to actually be the job description. So what was the point of the requirement for due process in the statute? Well, is it your position that if a person held a senior policy position as defined, that they could not be withdrawn from the collective bargaining unit under this legislation? I mean, are you saying that the legislature cannot make a policy decision of essentially saying if we have a collective bargaining unit, the manager shouldn't be a part of that unit? Are you saying that they have no right to do that? No, we're not. In fact, I mean, the labor law, which is 30 years old, over 30 years old now, but at the time of this act it was enacted in 1983, 30 years before, and it sets forth broad categories of positions that are excluded from collective bargaining, including managerial and supervisory. But they just expanded this list. Well, I mean, the statutory scheme sets forth definitions, and the board for 30 years has applied those definitions on the facts of each particular job, each position to determine whether that position, the employee in that position, holds those types of managerial or supervisory duties. Here the legislature gave the governor authority outside that scheme to designate people. The legislature could have, I mean, to answer your question, the legislature could have just said all senior public service administrators are excluded from collective bargaining, all state employees. The legislature did not do that. Okay, but they restricted that broad ability to do that. They narrowed it by saying essentially, although we could say everybody in these categories are not part of the collective bargaining unit, we're going to limit it to 3,500 or whatever the number was, 3,800. And in order to limit it, we don't know which specific ones, what employees should be removed from the collective bargaining unit, So we're going to leave that to the governor to decide whether good management techniques call for him to identify 3,800 or two. Correct? Well, but nothing in the statute said that he had to do it that way. The statute gave him the number. Nothing in the statute said that among those numbers he should designate only those who are managerial or only the higher managerial ones. Nothing in the statute said he should treat... Didn't they do that by the definition of the job position? Right, but within each job position. So within, say, senior public service administrator, nothing in the statute says how he should go about deciding which ones of those to designate. It gave him the arbitrary discretion. Is that necessary in legislation? Well... To micromanage the decision-making process as opposed to it's your decision, exercise your discretion? Yes, it's unconstitutional because there were no rational standards given him as to how to go about exercising that authority. So that the result was that people similarly situated could be treated differently. So you could have two employees sitting side-by-side performing the exact same duties, holding the same position, and he had the authority to designate one and not the other for exclusion. And in the proceedings before the board, the board was charged with looking at the petitions that were filed, but not with looking at what wasn't filed. So even in the cases where the board considered objections, even though we don't agree with how they handled it, they still, nothing in the statute gave them the authority to say, well, why didn't you, to the governor, why didn't you designate these other ones who performed the exact same duties as these ones you did designate?  The boss explain why one manager is in the unit and one manager is outside the unit? The legislation doesn't require that it be based on whether the person's a boss. It just says this type. The person designated to be withdrawn from the collective bargaining unit, obviously under this legislation the governor can say, this person in this position is exempt, and this person in that position, although it could be withdrawn, we're going to leave them in the collective bargaining unit. Right. The legislation set forth no rational standards, and so it allowed the governor to do that in an arbitrary way. And that's the hallmark of unconstitutional delegating. You don't think an executive should have that discretion? Well, I think that the, I mean, under Illinois law, statutes are supposed to be read, mandatory acts are usually read in connection with the original acts and the purpose of the original act. I mean, the original act here is a 30-year-old labor relations scheme setting forth, you know, setting forth a broad public policy in favor of collective bargaining, the presumption of collective bargaining rights, you know, absent an employer showing a reason for an exclusion under certain specified categories. And so if you read this amendment, in light of that 30-year-old statutory law, then, no, this amendment did not set forth sufficient standards to avoid arbitrary executive authority, and that's why it's unconstituted delegation. It allowed the governor to treat similarly situated people completely differently for arbitrary reasons, making it a denial of equal protection. And then it also constitutes special legislation because an amendment that added Section 6.E, 1E, and F, allowed protected positions in three agencies represented by three unions other than AFSCME, even though AFSCME represented employees in the exact same positions in other agencies. And even though, you know, some of those employees were added to bargaining units after that December 2, 2008 date, that the legislature chose for some unknown reason as the cutoff. And so that also made it unconstitutional on its face because people were protected, and among the people that weren't protected, the governor had unbridled authority to choose. And in light of the statutory scheme, yes, it's unconstitutional because there was no limit on his authority within these broad categories. Well, the purpose here was to rebalance, to make certain there were enough people in managerial positions to run the government. Well, that's what some statements in legislative history say. But no two people are alike. So what's wrong with culling among them those who you think would be the best designated to do it? Well, nothing required the governor to do it that way. I'm sorry, I couldn't hear the last part. Nothing required the governor to do it that way. There's nothing in the statute that set forth the standards to say, you know, pick the ones among here who you think are managerial. I mean, he could have picked, you know, left everybody in in one agency. And legislative history also shows that one of the agencies specifically discussed was the Department of Transportation. But then the legislature amended those people out in Section 6.1E and protected them from designation, even though legislative history showed that there was no one in the Department of Transportation in charge because they were all in the unit. So, again, it was, you know, they arbitrarily chose to protect certain people. And then with respect to the people who were left, to let the governor choose, instead of having an evidentiary hearing where the governor chose, you know, labor board, I think these are managerial. I mean, there are also statements in legislative history saying that, where Representative Curry said the governor will have to go to the labor board and say these people should be excluded as managerial. People or positions? Well, it's positions. We all know they're occupied by people. Some of them actually weren't occupied under this amendment. But where they were occupied, then the governor was supposed to designate who occupied the position. Do you know how many were unoccupied? I don't know the answer to that. Counsel, if the word managerial were used in the statute, would that cure the problems you're complaining about this morning? No. I mean, not just using that word in the statute, without definitions and parameters and limits on how that would be decided. But there's a definition for managerial in the statute, correct? In the preexisting statute, there is a definition of managerial employee in that those employees are excluded. And there's 30 years of board case law with review by the appellate court and appellate court decisions saying what's managerial under that statute, yes. But nothing in this legislation said that the governor was supposed to follow that definition. In fact, the board has interpreted it as not requiring that and just requiring that the governor just file a petition and designate somebody without any finding that the person is managerial. Where we stand right now is that the one-year time period in which the governor had to make these 3,850 appointments, in which only about 1,900 were actually made. No, I think there were over 3,000 made. Over 3,000? I think there were a little less than the total allowed. I think it was still over 3,000. But with that, it's over. The year is up, and the designations were made, and people have left their collective bargaining units, and they're in managerial positions, and who's driving this car? And the result of it being over is that under the Labor Act's historic scheme that still exists for people other than these positions designated here, if an employee is managerial and then undergoes a change of duties, there can be a petition, a unit clarification petition with the labor board seeking to restore collective bargaining rights for that position on the grounds of a change in duties. Under this statutory scheme of Section 6.1, there is no such procedure. So if the governor designated someone for exclusion and that person was certified by the board as excluded, and the next day that person had a change in job duties and was indisputably no longer high-level managerial, there was no procedure to bring that position back into the bargain unit. So, in effect, it gave the governor the authority permanently to amend the labor law to exclude that position from collective bargaining. Can it go back to the online labor relations board? Not under Section 6.1. It just says that position is excluded. I'm sorry. It said the position, once the board certifies the exclusion, it's excluded. And there is not a provision. But the legislature could reinstate it, couldn't it? It would take legislation. Right. So it's not the governor permanently excluding that position from the unit. It's the legislature. Right. The legislature, in effect, gave the governor the authority to, in effect, permanently amend the labor act to exclude positions. Well, to exclude under the labor law, whether it's permanent or not, is a legislative decision that could be revisited by the legislature sometime in the future. But under the current statutory scheme, whereas with other positions, they can go in or out based on unit clarification, under this amendment there is no such right. So it really gave the one governor for one year a right to take people out. Right. And some of the people taken out, I mean, the board had previously issued decisions finding, say, that employees who were routine exempt could still be included in bargaining units, that civil service exempt, they could still be included in bargaining units because the focus was on their job duties and authority, not their civil service classification. The board had found that employees who were term-appointed employees could still be in bargaining units. So if any of those people were taken out permanently through these designations of exclusions, they've not only, you know, are out of bargaining units. They don't have civil service protection. They've lost the just cause rights for discharge, the promotion, you know, fair reasons for promotion. All these rights they had under collective bargaining agreements that they don't have because they weren't covered by civil service. And there's no procedure to get those rights back, even if those people have a change in duties and they're no longer performing managerial duties. So they have to be put into a different job classification. Oh, different job. If they're into a different job classification, yes. But not if they're same position, but there's a change of duties. So then what about Plan B in relation to that? What is Plan B? It's too long to explain. I won't do it now. Well, let me ask you. As a practical matter, we have, I think the number was 2 or 3,300 positions that were made exempt, basically. Correct? It was somewhere in that field. Somewhere in that area. So the program is over under this legislation? It was a one-year. And how many employees are involved in this appeal? If you were correct and the board was reversed, would the judgment of this court be affecting only 3,400 people or would it be affecting only the people involved in this appeal? Well, I think under the order entered by the court, the constitutional issues raised in this case are to be considered precedent for any other appeals that are pending. There are a number of appeals that have been stayed pending this appeal. So, I mean, to the extent that we are arguing that the statute is unconstitutional on its face, we submit that the court should declare the statute unconstitutional and therefore reverse the board orders in this case. I mean, all this before the court right now are these appeals in this case. How many positions are about before us today? Do you have any at this present moment? I mean, in the first round of cases, the governor, it was over 1,000 people because the CMS filed petitions over the first several weeks for about 1,500 people. So what we're talking about today would affect 1,500 positions approximately? Yeah, I'm actually not sure of the exact count of how many are in this appeal. It might be. But, you know, I mean... Is it in the ballpark? I think it's in the ballpark. Okay. I mean, you know, our view is that it was unconstitutional. The legislature could go back, you know, if it felt they were high-level managerial and re-write a statute that would meet constitutional standards that would allow, you know, basis to remove managerial people. But it didn't do it under this statute. I mean, our alternative argument on our procedural due process, which is an alternative to our facial constitutional challenges, on that we're requesting that the court reverse the board and remand the cases for hearings. I mean, the board found basically that the governor had the right arbitrarily to decide which positions to exclude, and we feel that was inconsistent with the language of the statute that set forth, you know, the requirement to file job duties and a due process hearing. But if the board is correct, if you find that the board is correct and that the statute did give the governor the arbitrary authority, then really it's unconstitutional for the other reasons we've cited for the facial constitutional challenges of unconstitutional delegation to the governor, equal protection, and special legislation violations. And that would require complete reversals of the board decisions. And the, I mean, the board procedures did not allow any basis to, you know, have, I mean, traditional representation hearings, the employer had the burden of putting on why somebody was managerial, and here the unions and the employees were, in effect, asked to rebut a presumption that they were properly designated, but without any ability to get information and without the right to even have a hearing to show that they didn't do what the governor said they did. We've also submitted that the Section 6.1 with respect to the 1900 employees is an unconstitutional impairment of contract because it allowed the governor to remove up to 1900 employees covered by AFSCME's contract with the state during the term of that contract. And the fact that there's no constitutional right to collective bargaining is irrelevant to the fact that AFSCME does have and did have, at the time the positions were excluded, a valid, enforceable contract, enforceable under Illinois law, and the governor was given the authority to remove a huge number of employees up to 1900 during the term of that contract, removing from the employees the rights under the contract, the terms of employment set by that contract, including things such as just cause for discharge, and removing AFSCME's right to represent the employees and enforce its contract as to those employees. And for that reason, for those employees... The collective bargaining agreements that you're operating under or considering expire when? June of 2015, June 30th. So in two months, three months, these collective bargaining units will expire, and the people removed from the collective bargaining units would be in the same position as they would have been in June of 2015. Well... That's in a new collective bargaining agreement. No, because the people, when the current contract expires, anybody currently represented remains in the union, and if there's a successor contract, then they're covered under the successor contract. But for the employees taken out during the term of a contract, their rights under the existing contract were impaired. They won't be eligible to be in the unit going forward, right? Right. And they lost the benefits of the contract for its term after they were removed. Right. Very well. Thank you. You'll be having your rebuttal... Thank you. ...after you hear from the employees. Thank you. Thank you. Ms. Mescaleras? Good morning, and may it please the Court. Assistant Attorney General Ann Mescaleras for the respondents. I think it would be helpful to start out with a few broad concepts and then turning to the purpose of Section 6.1, and then if I might, I would address the concerns raised by AFSCME in the Court  Public and private companies, Public sector collective bargaining is a creature of statute in Illinois. The General Assembly legislates on matters of public sector collective bargaining, and a few points are significant and are relevant to this case. One, there is no constitutional right to public sector collective bargaining. Two, the Act has always covered some positions, but not others.  Four, there is no right, constitutional, statutory, contractual, or otherwise, to a position's continued coverage under the Act, because the General Assembly has an ongoing right to amend legislation, and there is no right to the continuance of a law. Turning now to Section 6.1, this was merely corrective legislation. The General Assembly believed that the Act, as written, wasn't working as it should have been. Instead, the inclusion or potential inclusion of top-level positions in collective bargaining units had impeded government's efficient operations. The General Assembly took steps to correct this problem. Section 6.1 is a narrow piece of legislation that sought to return government to efficient operations. It was a legislative remedy not to disrupt government operations, but to fix them for a problem arising under the Act, as written. And the General Assembly did this in Section 6.1 by allowing the governor, during only a one-year period, to identify, within the legislatively established parameters and consistent with its intelligible standards, those relatively few top-level positions in agencies directly responsible to the governor, whose roles were integral to efficiently running state government operations and also incompatible with simultaneous membership in a collective bargaining unit. Those relatively few top-level positions were incompatible with simultaneous membership in a collective bargaining unit and were excluded in order to assure their undivided loyalty to their employer, the governor, and the governor's policies, to maintain the distinction between management and labor, and to allow them to deal with the employer's policies and apply them to subordinates without regard to any biases that might arise from their own bargaining unit membership. The General Assembly charged the Board with processing these designation petitions, and the Board did so by adhering to the plain language of Section 6.1 and consistent with due process. Now, I'd like to address the three or four arguments raised by AFSCME in its opening, the first being this notion that the governor had discretion to identify those positions within the legislatively established parameters whose roles were incompatible with the simultaneous membership in a collective bargaining unit. The fact that the governor could exercise the discretion was not unconstitutional. It did not violate the separation of powers clause because the governor exercised a purely executive function, and it was rationally related to a legitimate government interest, realizing and returning government to efficient and effective operations, and so that does not violate equal protection, substantive due process, or Illinois' special legislation clause. Section 6.1 did not delegate to the governor the power to make the law, but only to execute it, a purely executive function. He did this by exercising his discretion within the intelligible standards set forth by the General Assembly to return government operations to efficiencies. It made sense that the governor could choose those designees from within those legislatively established parameters. The legislation allowed the governor as a co-equal branch of government this discretion in his employment relationship with those positions and agencies under his office, and he had the expertise as their employer and the ultimate executive in charge of those positions to identify those relatively few top-level positions whose roles were incompatible with bargaining unit membership, and it achieved functionality to determine how the government needed to operate efficiently. AFSCME even admits that those designees with SPSA titles performed a wide range of functions, and they had roles that differed tremendously, so it made sense that the governor was in the most advantageous position to execute the law like this. Now, AFSCME raised some concerns that the board didn't consider the designated positions' job duties. The board couldn't do this under the statute. The board's job was done once it determined that a position held either the SPSA title or the double-exempt status. So you're saying that if an auto mechanic was in that position, the board had no authority to look beyond the title and say, wait, this guy's a mechanic, he's a manager, he shouldn't be removed from the bargaining unit? That's right. Under the statutory scheme, the board didn't have that authority, and the board can only exercise the authority given to it by the legislature. I think this question goes to, what if a position was improperly classified? Right. What if a position was improperly classified as an SPSA? The board's job was done once it determined that it held that title, and here AFSCME didn't contest that these positions held the title, and CMS presented evidence that every position held the title. A couple of things I'd like to mention to the improper classification. One, if a position was misclassified, then the governor's discretion would work perfectly to the advantage of AFSCME and the incumbent, because the governor could determine your role, even if you're identified as an SPSA, your role is not one that plays to the efficiencies of the government. So your role is not incompatible with membership in a collective bargaining unit. And therefore, I'm not going to petition for removal? Exactly, exactly. There's also a mechanism to address if someone was improperly classified as an SPSA in the first instance and shouldn't have been subject to designation. The incumbent can ask for an audit of the position from CMS, and then the Civil Service Commission can reclassify the position as something other than an SPSA. Once the position is reclassified, or what the incumbent or the union would say, properly classified, the incumbent or the union could ask the board via unit clarification proceeding for the position to be put back in the bargaining unit. Now, the union is also concerned, going to the governor's use of his discretion, saying, you know, two SPSAs could have identical positions, they could have identical responsibilities, they could perform identical duties. The governor, under the statutory scheme, could designate one but not designate another. Hypothetically, this is true. But there might always be outliers in the operation of a statutory scheme, but that doesn't make it unconstitutional. Why isn't that a denial of equal protection when similarly situated people are treated differently? The first thing I'd like to point out in regard to that is, AFSCME admitted that these SPSAs had different roles and different duties. So there is no, they didn't prove similarly situated individuals. To the extent that they did, we fall under the rational basis test for upholding the constitutionality, which goes to the equal protection, the substantive due process, and the special legislation claim. Here, even in light of the scenario I just described, Section 6.1 survives the rational basis test because the legislation still furthered the legitimate government objective of returning government to efficient operations. The law, I'm sorry. So your argument is, if there's a rational basis for the action, there's no violation of the equal protection? Exactly. The law does not have to work perfectly, and it does not have to work with mathematical precision, so long as it bears a rational relationship to a legitimate government interest. And here it did, because the governor was uniquely qualified to identify those relatively few positions whose roles were incompatible with simultaneous membership in a collective bargaining unit in order to get back the efficiencies that the government had lost. Do you agree that the analysis here is dealing with positions and not individuals? Correct, so it is a position. If that's the case, on paper, two SPSAs in two different departments, on paper would be equal, correct? As far as that job classification, as an SPSA, that's right. Not the people inside it who are holding those positions, and not what they are doing, but the job classification. Exactly. And under this legislation, as I understand your argument, the legislature gave the governor the ability to pick between the two of them. Yes. To exclude one or both, or neither. Correct. Okay. Now, is there an equal protection argument there if we're dealing with a job description, in effect, where the governor is able to pick one job description in one department over another? No, the way the legislation was written is rationally related to maintaining or reinstituting government efficiencies, because he would know, as your question points out, the governor, as the employer, and not the legislature, per se, would have the information to know whether that person's role or that position's role was incompatible with membership in a bargaining unit. So there's no equal protection violation. It passes muster under the rational basis test. Is there an acknowledgment that job descriptions do not necessarily reflect reality  I can't speak to that, but if there was a problem with a job description or duties not matching a classification, as I said a few minutes ago, there was a method to fix that. And either the union or the incumbent could have put the wheels in motion with the Civil Service Commission to reclassify the position. But the board had no authority in these designation proceedings to ask about job duties or to see if a position was properly classified. That wasn't its role under the Act. It is CMS and Civil Service Commission role. And I'm thinking of a case, hypothetically speaking, if there were some unclean hands, for example, if the auto mechanic was classified as an SPSA and was a member of a bargaining unit who could have been designated out. So then he was reaping the benefit of a salary of a top-level position, yet he also was a member of the bargaining unit. It seems that if something was that awry, that the incumbent would have brought that to CMS or the Civil Service Commission to fix, in essence, a misclassification of the position. Could you also use a Section 9 representation proceeding to do the same thing? No. So those are purely representation proceedings. This didn't affect any representation proceedings or any board determination proceedings made under Section 3 of the Act, the definition of a public employee, and then the exceptions to that, the managerial, supervisory, and confidential. This was something separate and apart from representation proceedings or board decisions in them, but it did not, it didn't modify any preexisting means of determining those sorts of issues under those sorts of proceedings. So does a return to the legislature look imminent here? I'm sorry? Does a return to the legislature, is that imminent here? I have no knowledge if there's any legislation pending. I will say that, you know, this was corrective legislation instituted by the General Assembly. The board, you know, going back to your representation proceeding questions, the board had properly applied the Act as it was written, and the intent of the Act when it was enacted in the early 1980s couldn't have been, couldn't have been to interfere with government operations and to cause inefficiencies. But to the extent that that became apparent to the General Assembly, that the Act covered too many or the wrong types of positions to the detriment of governmental operations, it enacted this legislation. And so the General Assembly sought to redress these problems within the statutory scheme it created by amendment, which is how legislation works. What about the impairment of contract? So there's no impairment of contract here. The state, by allowing the statutory scheme, is not impairing the terms of the collective bargaining agreement between AFSCME and CMS. It only affected a change in the composition of the bargaining units. It doesn't divest those people who were removed of rights they had under the collective bargaining agreement? It did, but let me explain. So the people that were designated out came out of the collective bargaining unit if they were already a member, but a position first has to be covered by the Act in order to collectively bargain and reap any benefits from a collective bargaining agreement. The legislature said these people are no longer covered by the Act, so they no longer... But at the time they were part of the bargaining unit. Some of them were. Okay. Let's assume some person was, as Judge Neville is saying. Yes. Now this legislation comes in. Now the governor comes in and says that person is no longer part of this collective bargaining unit because we went through the mechanics of the statute. Right. The question I think Judge Neville and I and perhaps Judge Simon are asking is, not being a member of the collective bargaining unit, doesn't that impair my contractual right that I had? No. Why? Because the General Assembly decides the positions that are covered by the Act. Right. And the state and the union don't contract for the coverage of positions. That would be illegal. You're only entitled to collectively bargain and reap any benefits from a collective bargaining agreement if you're first covered by the Act. The parties, CMS, the state and the unions, don't contract about positions covered by the Act. That's for the legislature to determine, and that's all the governor did here. Another note, the composition... Wait a minute. Consider your audience, me. I don't get that. If I'm part of the collective bargaining unit today, I get certain benefits. Right. The legislature now authorized the governor to take me out of a collective bargaining agreement that I had a piece of until June of 2015. Now I don't have those rights. My contractual right that I had is now gone. Isn't that... No. You're only a beneficiary to the contract. They weren't parties to it. They only reaped the benefits because they fell under the Act's protections. The composition of bargaining units... I'm not a beneficiary, a third-party beneficiary of the contract? Sure, but that doesn't... There is no breach of a contract term because the parties can't bargain over who is covered by the contract. The Act decides who's covered under the Act. And once someone is not covered by the Act, they are not entitled to be a beneficiary of any collective bargaining agreement. I will tell you that the composition of bargaining units changing, people coming in and out, is nothing new. If there is a representation petition filed, if a union files a representation petition to bring people into a bargaining unit, that can happen during the pendency of a collective bargaining agreement, but it doesn't impair the terms of the agreement. I'm sure AFSCME wouldn't agree to that. I'm sure AFSCME wouldn't argue that that impairs the terms of the agreement. Positions routinely go in and out of bargaining units, but that has never been held to violate a collective bargaining agreement under impairment of contract. Thank you, Counsel. If the Court has no further questions, I'll ask that the Board's orders be affirmed. Thank you.